**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| STEVEN E. WATSON, | ) | Case No. 07-11294 (BLS) |
| WILLARD AND CATINA ISAACS, | ) | Case No. 07-10899 (BLS) |
| LOIS E. TUNNELL, | ) | Case No. 07-11329 (BLS) |
| STEPHEN AND MELINDA BASILIO | ) | Case No. 07-11319 (BLS) |
| | ) | |
| Debtors. | ) | |

**OPINION**[1]

**I.  INTRODUCTION AND SUMMARY**

These cases present a question of first impression in this
jurisdiction:  whether the Court may confirm proposed Chapter 13
plans that include provisions governing application of mortgage
payments and requiring a home mortgage lender to provide timely
notice of post-petition fees and charges assessed pursuant to the
relevant loan and security documents.  The Court holds that the
plans are confirmable (subject to certain revisions described
below) and that the disputed plan provisions do not run afoul of
the Bankruptcy Code's prohibition on modification of the rights
of residential mortgage lenders.

A second, related question before the Court is whether an
order of this Court awarding a mortgage lender its fees, costs or
other charges in a set amount operates as a bar to the lender's

---

[1]    This Opinion constitutes the findings of facts and
conclusions of law of the Court pursuant to Federal Rule of
Bankruptcy Procedure 7052, which is made applicable to contested
matters by Federal Rule of Bankruptcy Procedure 9014.

ability to recover fees and costs in excess of what is allowed by the Court.  The Court concludes that it does, and a lender cannot recover fees and costs over those allowed by the Court, irrespective of the terms in the loan documents.[2]

The Court recognizes that its ruling today only governs proceedings in the above-captioned cases.  However, the Court firmly believes that the interests of all parties appearing before it are best served by a measure of uniformity and predictability in the administration of cases under Chapter 13. The standard Chapter 13 plan in this jurisdiction, known in our Local Rules as Form 103, should be revisited in light of this Opinion and in consideration of developments in other jurisdictions.  Accordingly, by separate Order issued contemporaneously herewith, the Court will direct the Chair of the Local Rules Committee of the Bankruptcy Section of the Delaware State Bar Association to form a special committee for the purpose of amending Form 103 and such other provisions of our Local Rules relating to practice and procedure in consumer bankruptcy cases as may be necessary and appropriate.

---

[2]    Counsel also briefed and argued certain issues relating to standards and procedures for adjudicating contested proofs of claim filed by mortgage lenders in Chapter 13 cases.  These issues are largely distinct from the plan confirmation matters presently before the Court and will be the subject of a separate opinion to be issued by the Court in the near future.

## II.   **PROCEDURAL HISTORY**

Each of the above-captioned debtors (hereinafter, the "Debtors") has filed a plan containing the Proposed Plan Language (as such term is hereinafter defined and explicated).  These plans differ materially from Form 103, the standard Chapter 13 plan in this jurisdiction.  Creditors holding claims secured by mortgages on these Debtors' homes (hereinafter, the "Mortgage Lenders") have objected to confirmation of each of these plans, and the Chapter 13 Trustee did not recommend these plans for confirmation.  After numerous status conferences with the Court, counsel for the Debtors and for the Mortgage Lenders agreed to brief these issues on a consolidated basis, stipulating to relevant facts common to each of the Debtors' cases.[3]

The parties have completed briefing and the Chapter 13 Trustee also submitted a brief addressing the issues.  Oral argument was held on February 22, 2008.  This matter is ripe for decision.

## III.   **THE PARTIES' POSITIONS**

### A.   **Notice of Post-petition Charges**

The Debtors have each filed a Chapter 13 plan containing extensive provisions requiring the Mortgage Lenders to provide the Debtors with timely notice of all fees or charges proposed to

---

[3]   The Court commends all counsel involved in this matter for their courteous, professional and pragmatic approach to this dispute.

3

be assessed under the mortgage, and to also provide the Debtors with timely notice of all changes to obligations arising from the mortgages (such as interest rate changes and modifications to escrows) during the pendency of the plan (such provisions being collectively referred to as the "Proposed Plan Language").[4]  If a Mortgage Lender fails to provide the required notice, the plans provide that any such fees or charges will be disallowed or forfeited.  Debtors contend that these protections are necessary to avoid a situation where a debtor fully performs her Chapter 13 plan over sixty months, receives a discharge, and thereafter receives notice of a substantial amount due under the mortgage on account of fees or charges that accrued during the preceding five years.  If notice of such charges is regularly provided during the pendency of the case, these Debtors reason, the Court can rule upon their allowability in a timely fashion and perhaps avoid a financial crisis for the consummated debtor and even the need to file a new case.

     The Mortgage Lenders acknowledged at argument that "mere notice" requirements were likely permissible, but contend that the proposed disallowance or forfeiture provisions impermissibly modify their contractual rights in violation of 11 U.S.C. § 1322(b)(2).  In particular, the Mortgage Lenders assert that the

---

     [4]    The Proposed Plan Language is annexed hereto in its entirety as Appendix A.

Proposed Plan Language imposes upon them affirmative duties, which do not otherwise arise under applicable state or federal law, and therefore abrogates their right to send notice of fees and charges at their own discretion or on other terms provided for under the mortgage instruments.  The Mortgage Lenders make similar objections to provisions governing how payments must be applied (viz., to pre-petition arrearages or to post-petition obligations).  Additionally, the Mortgage Lenders contend that the provisions governing allowance or disallowance of claims likewise impermissibly modify their rights under the mortgage documents and state law to the extent these plans impose a "reasonableness standard" for fees and charges that may be otherwise absent from the relevant documents or applicable law.

## B.    **Allowance of Fees as a Cap**

The Debtors argue that this Court has the authority and jurisdiction to determine the reasonableness of, and also to limit, any fees or costs charged against the Debtors' estates. Their plans provide procedures for hearings in this Court to consider objections to fees and charges assessed under the mortgage instruments.  The Mortgage Lenders reply that their contracts permit them to recover all fees and expenses incurred. They reason that, while the Court may limit or disallow the "claim" for those fees and charges during the pendency of a bankruptcy case, the "rights" of a mortgage holder survive (by

operation of § 1322(b)(2)) such that collection of fees and charges above and beyond the amount allowed by the Court may occur after the close of the bankruptcy case.

### IV.   <u>JURISDICTION AND VENUE</u>

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of these matters constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (L) and (O).

### V.   <u>DISCUSSION</u>

### A.   <u>This Court Has Jurisdiction Over the Plans, and Over Fees and Charges Arising Under These Debtors' Mortgages</u>

Under § 1322(b)(2), a Chapter 13 plan cannot "modify" the rights of the holder of a security interest in a debtor's primary residence.  11 U.S.C. § 1322(b)(2) ("[T]he plan may . . . modify the rights of holders of secured claims, <u>other than a claim secured only by a security interest in real property that is the debtor's principal residence</u> . . . .") (emphasis added).  The Mortgage Lenders in these cases have contended in their briefs and at argument that the anti-modification provision in § 1322(b)(2) operates to limit this Court's jurisdiction to require special notice procedures and to review claims, fees and charges assessed under a mortgage prior to and during a bankruptcy case. (Mortgage Lenders' Responsive Br. 13 ("[T]here is no basis for

the Court's assumption of jurisdiction to affect, modify or otherwise limit any other 'rights' that such creditor may have with respect to the debtor.")).  As set forth below, the Court disagrees, and concludes that its jurisdiction does indeed extend to the debtor-creditor relationship pertaining between these Debtors and the Mortgage Lenders, and to the allowance and disallowance of claims arising therefrom.

The basic statutory grant of bankruptcy court subject-matter jurisdiction is contained in 28 U.S.C. § 1334.  Specifically, § 1334(a) provides the district court with "original and exclusive jurisdiction of all cases under title 11."  28 U.S.C. 1334(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. 1334(b) (emphasis added).  Section 1334(e)(1) provides the district court in which a case under title 11 is commenced or is pending with "exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."[5] 28 U.S.C. 1334(e)(1).  The property of the estate referenced in §

---

[5]     28 U.S.C. § 157(a) states that the district court may provide that any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.  28 U.S.C. § 157(a).  The United States District Court for the District of Delaware has so provided.

1334(e)(1) is defined in 11 U.S.C. § 541 and includes "all legal and equitable interests of the debtor in property . . . ."  11 U.S.C. § 541(a)(1).

Where the district court has subject-matter jurisdiction under § 1334 and the district court has referred the matter to the bankruptcy court under § 157(a), a related question arises – whether the matter before the bankruptcy court is a core or non-core proceeding under 28 U.S.C. § 157(b).  "Importantly, 28 U.S.C. § 157(b) is **not** an independent basis for conferring subject-matter jurisdiction to a bankruptcy court.  Rather, 28 U.S.C. § 157(b) delineates the scope of the bankruptcy court's power to exercise the subject-matter jurisdiction granted to the district court under 28 U.S.C. § 1334."  In re RNI Wind Down Corp., 348 B.R. 286, 292 (Bankr. D. Del. 2006) (emphasis in original).  Core proceedings include "matters concerning administration of the estate" and "other proceedings affecting . . . the adjustment of the debtor-creditor relationship."  28 U.S.C. § 157(b)(2)(A), (O).  In a core proceeding, a bankruptcy court may enter a final order disposing of a dispute.  28 U.S.C. § 157(b).  If the matter is non-core, but related to a pending case under title 11, the bankruptcy court cannot issue a final order, but rather submits proposed findings of fact and conclusions of law to the district court for review and consideration prior to entry of a final judgment by the district

8

court.  28 U.S.C. § 157(c)(1); <u>Halper v. Halper</u>, 164 F.3d 830, 836 (3d Cir. 1999).  Confirmation of these Debtors' plans is clearly a core proceeding.  28 U.S.C. § 157(b)(2)(L) (providing that "[c]ore proceedings include . . . confirmations of plans").

As noted, the Mortgage Lenders have argued that § 1322(b)(2)'s anti-modification provision strips this Court of jurisdiction to allow or disallow (on a final basis) claims and requests for payment arising under a mortgage.  The Mortgage Lenders contend that they are best suited – and that this Court lacks authority – to determine what fees and charges can and should be imposed.  (Mortgage Lender's Responsive Br. 19, fn. 7 (encouraging the Court to leave the issue of fees and costs to the Mortgage Lenders on the ground that "the reluctance of lenders to pay unnecessary fees and costs is the best indicator of reasonableness")); <u>see</u> <u>also</u> <u>In re Wilson</u>, 321 B.R. 222, 226 (Bankr. N.D. Ill. 2005) ("What appears to trouble [the lender] is that the Model Plan affirms that the bankruptcy court – not [the lender] – is adjudicator of disputes under the loan documents during the Chapter 13 case.").  While § 1322(b)(2) defines, in part, what may be included in a confirmable plan, it is a giant leap from that proposition to suggest that the Court cannot consider and rule upon the allowance of pre-petition or post-petition claims arising under a debtor's home mortgage.  The Court has both the authority and the obligation to adjudicate

claims asserted against a debtor.  Accordingly, the Court rejects the Mortgage Lender's contention that this Court lacks either jurisdiction or statutory authority to hear and decide pre-petition and post-petition claims and charges arising under the relevant mortgage documents.

Before leaving the issue of this Court's jurisdiction, the Court must dispose of one further argument.  Mortgage Lenders have devoted much time and attention, in briefing and at argument, to the distinction between "claims" and "rights."  In a nutshell, Mortgage Lenders contend that even if this Court may allow or disallow mortgage-related claims for fees, costs or other charges in a bankruptcy case, such a ruling applies only during the bankruptcy case, and the Mortgage Lender's "rights," which cannot be modified under § 1322(b)(2), survive to permit full recovery or collection after the Chapter 13 case is closed. An example may help to clarify the argument: suppose a lender chooses to require a $100 property inspection every week for the first year of a debtor's plan.  The debtor objects to this $5,200 charge, and the Court (after notice and a hearing) permits reimbursement only for twelve inspections and disallows the remaining $4,000 in charges.[6]  Mortgage Lenders herein contend

---

[6]    As a more concrete example, established practice in this jurisdiction automatically allows the sum of $450 to a lender seeking relief from stay as presumptively reasonable fees and costs (lenders seeking Court approval of a larger award must make an application to the Court).  Under today's ruling, that

that, notwithstanding the Court's ruling, they may attempt to collect the remaining $4,000 after the conclusion of the case if they had a "right" to impose the charge under their documents or applicable state law.

This cannot be.  There is not a single reported decision from any court, anywhere, to support this remarkable proposition.[7]  Mortgage Lenders' argument rests on a flawed interpretation of the term "rights" as used in § 1322(b)(2). Those "rights" are determined according to state law and the contract terms.  See <u>Nobelman v. American Sav. Bank</u>, 508 U.S. 324, 329 (1993).  When the Court, applying these principles, disallows a requested fee or charge, that is a determination that applicable law, or the mortgage contract, do not afford the Mortgage Lender a "right" to payment.  At bottom, acknowledgment of the Court's exercise of its authority to rule conclusively upon asserted claims and charges is simply not an impermissible modification of the Mortgage Lenders' rights.  See <u>In re Wilson</u>,

---

award operates as a cap to bar the lender from assessing greater amounts for this task from a debtor.  Whether the amount of presumptively reasonable fees and costs should be increased or decreased in response to market forces or other factors is a question that may be best left to the deliberations of the Special Committee on Local Rules being formed pursuant to this Opinion.

      [7]    At argument, in response to the Court's inquiry on this point, counsel suggested that the paucity of case law was perhaps due to the obviousness of the proposition.  The Court concludes otherwise.

321 B.R. 222, 226 (Bankr. N.D. Ill. 2005) ("While a court order
may not be a prerequisite to the enforcement of a valid contract
provisions allowing for attorneys' fees, . . . neither is a court
prohibited from fixing the amount of attorneys' fees even when a
contractual agreement provides for the recovery of such fees.").

B.    **Proposed Plan Language**

The Court must now consider the scope and effect of §
1322(b)(2) of the Code in order to determine whether the Plans
may include the Proposed Plan Language.  As noted above, §
1322(b)(2) provides that a plan may "modify the rights of holders
of secured claims, other than a claim secured only by a security
interest in real property that is the debtor's principal
residence . . . ."  11 U.S.C. § 1322(b)(2).  In other words,
plans may not alter the rights of a holder of a mortgage on a
debtor's primary residence.  By protecting these rights, Congress
sought "'to provide stability in the residential long-term home
financing industry and market.'"  In re Morphis, 30 B.R. 589, 593
(Bankr. N.D. Ala. 1983) (quoting United Cos. Fin. Corp. V.
Brantley, 6 B.R. 178, 189 (Bankr. N.D. Fla. 1980)).

The Code does not define the term "rights."  Nobelman v.
American Sav. Bank, 508 U.S. 324, 329 (1993).  "In the absence of
a controlling federal rule, we generally assume that Congress has
'left the determination of property rights in the assets of a
bankrupt's estate to state law,' since such 'property interests

12

are created and defined by state law.'" _Id._ (quoting _Butner v. United States_, 440 U.S. 48, 54-55 (1979)).  The use of state law to determine property rights is not limited to ownership interests.  _Id._  It applies equally to security interests, including the interest of a mortgagee.  _Id._  In this case, therefore, the Mortgage Lenders' rights arise from the mortgage instruments, which are enforceable under state law.  The rights of a mortgage lender generally include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure.  _Id._ Presumably, these are the sort of substantive economic rights Congress sought to protect when it enacted § 1322(b)(2).[8]

---

[8]     To understand the import of the anti-modification provisions of § 1322(b)(2), it is perhaps helpful to consider what may happen to a secured lender who is _not_ entitled to the protections afforded to primary residential mortgage lenders, such as a holder of a claim secured by an automobile.  These creditors are subject to having their claims "stripped down" or "stripped off", and the interest rate adjusted according to market factors, depending upon the value of the collateral securing such claim.  _See_ _Till v. SCS Credit Corp._, 541 U.S. 465, 468-69 (2004).  Thus, while the Mortgage Lenders may have a variety of "rights" that may not be modified under a plan, as a practical matter the primary protection afforded to these creditors under § 1322(b)(2) is the right to not have the economic terms of their loan re-written in a bankruptcy case.

Allowing plans to modify such rights may potentially increase the risk borne by mortgage lenders and perhaps decrease the incentives in the financial marketplace to lend to potential home buyers.

In these cases, the Debtors have proposed to establish in their Plans (1) procedures for providing notice to the Debtors of charges and fees assessed or accruing under a mortgage, (2) mechanisms for the handling of disputes, and (3) requirements for the allocation of payments. See Proposed Plan Language, Appendix A. This is a question of first impression in this jurisdiction; however, numerous courts around the country have addressed whether plans may include such provisions and have permitted their inclusion. In addition, several jurisdictions have adopted model plans or local rules containing similar provisions. See In re Wilson, 321 B.R. 222 (Bankr. N.D. Ill. 2005) (jurisdiction adopted a model plan); In re Anderson, 382 B.R. 496 (Bankr. D. Or. 2008) (General Orders imposing standard procedures for Chapter 13 plans).

In Wilson, the debtor filed a model plan, which the Northern District of Illinois requires all Chapter 13 debtors to use pursuant to a local rule. 321 B.R. at 222. The model plan in Wilson contains provisions similar to the Proposed Plan Language in that it affords a mechanism for debtors and mortgage lenders to resolve disputes over the accrual of post-petition charges

14

assessed by the mortgage lender while the Chapter 13 case is pending.  Id. at 225.  Specifically, it required the mortgage lender to give itemized notice to the debtor of any outstanding payment obligations and outlined a procedure for resolving any dispute over the amounts listed in the itemized notice.  Id.  The lenders in Wilson objected to confirmation of the plan on the ground that its procedures violated § 1322(b)(2)'s prohibition on modifying the rights of the holder of a mortgage on a debtor's primary residence.  Id. at 223.

The court in Wilson found that "[b]y providing a procedure for the parties to use to definitively ascertain what a debtor owes his home lender, the Model Plan does not modify a mortgage holder's rights in violation of [section] 1332(b)(2)."  Id. at 225.  Rather, the model plan "merely provides a framework within which to enforce those rights according to the loan document terms."  Id.; see also Anderson, 382 B.R. at 504 ("The plan provision imposes an additional duty to notify Debtors' counsel and the trustee. [Lender] argues this additional notice 'modifies' its rights in contravention of § 1322(b)(2).  However, additional notice is more in the nature of a procedural requirement to aid Chapter 13 administration, than a modification and is therefore permissible.").

In In re Collins, No. 0730454, 2007 WL 2116416 (Bankr. E.D. Tenn. July 19, 2007), the court addressed the issue of whether 11

15

U.S.C. § 524(i) permits a debtor to propose plan language that imposes a procedure for crediting payments received by a mortgage lender under a plan to the claims for both the ongoing monthly mortgage payment and the mortgage arrears without violating § 1322(b)(2).  Collins, 2007 WL 2116416, at *4.  Pursuant to § 524(i), a creditor who willfully fails to credit payments received under a confirmed Chapter 13 plan to the detriment of a debtor violates the discharge injunction.  11 U.S.C. 524(i).  The court in Collins found that "language in a Chapter 13 plan burdening mortgagees with procedural obligations over the life of the plan does not, per se, violate § 1322(b)(2)'s anti-modification provision and is permissible and even desirable."  Collins, 2007 WL 2116416, at *11; see also Nosek v. Ameriquest Mortgage Co. (In re Nosek), 363 B.R. 643, 645 (Bankr. D. Mass. 2007) ("The purpose of a Chapter 13 plan is to allow a debtor to pay arrears during the pendency of the plan while continuing to make payments at the contract rate.  Payments made during the pendency of a Chapter 13 plan should have been applied by [the lender] to the current payments [then] due and owing with the arrearage amounts [received from the Chapter 13 Trustee] to be applied to the back payments. [The lender] cannot use its accounting procedures to contravene the terms of a confirmed Chapter 13 plan and the Bankruptcy Code.").

The Court finds the reasoning and consistent holdings of

16

<u>Wilson</u>, <u>Collins</u> and <u>Anderson</u> persuasive.  Plans containing procedures for timely notice of fees and charges, proper allocation of payments and adjudication by this Court of disputes over assessed fees, costs and charges under a mortgage may be confirmed without running afoul of section 1322(b)(2).

## C.   Procedures for Adjudicating Disputes
## Over Post-Petition Fees, Costs and Charges

These Debtors' plans also contain provisions for having the Court hear and decide objections to claims and requests for payment asserted by the Mortgage Lenders.[9]  As with the notice provisions discussed above, the Debtors submit that the purposes of Chapter 13 will be best served if a debtor knows in a timely fashion what she must pay, and what she will not have to pay.

As a practical matter, the issue is one of timing.  Current practice in this jurisdiction is that a Chapter 13 debtor learning on a post-consummation basis (that is, five years after plan confirmation) of substantial fees and charges accrued during the case must move to re-open her case and then request that the Court conduct a hearing on her objections to the accrued charges. The Court may then be left to develop an evidentiary record and rule upon five years of transactions that may add up to considerable sums.

---

[9]    As noted above, the Court will shortly issue a separate opinion addressing certain issues raised and briefed by the parties relating to standards and procedures for disposing of contested, mortgage-related proofs of claim.

The Mortgage Lenders contend that the Court's partial allowance of a claim or charge does not necessarily cap their ultimate recovery.  Specifically, they argue that § 1322(b)(2) protects their contractual right to recover <u>all</u> incurred fees and costs from the Debtors' estates.  The mortgage lenders reason that if the mortgage instruments do not contain a reasonableness standard, then the Court cannot impose one without violating § 1322(b)(2).  The Court disagrees.

Post-confirmation charges in a Chapter 13 case are not subject to 11 U.S.C. § 506(b) of the Code.[10]  <u>Rake v. Wade</u>, 508 U.S. 464, 468 (1993).  The Court, however, still has jurisdiction over a Chapter 13 case after confirmation occurs.  <u>Jones v. Wells Fargo Home Mortgage (In re Jones)</u>, 366 B.R. 584, 595 (Bankr. E.D. La. 2007).  Furthermore, a bankruptcy court has "the authority to determine whether post-confirmation fees and charges are reasonable."  <u>In re Sanchez</u>, 372 B.R. 289, 306 (Bankr. S.D. Tex. 2007).  As the Mortgage Lenders' right to post-confirmation fees and charges arises out of the mortgage instruments, which are enforceable under state law, state law governs the enforcement of that right.

Under Delaware law, a mortgage holder who recovers judgment against the mortgagor may recover "reasonable" counsel fees

---

[10]    Section 506(b) provides that a court shall allow reasonable fees, costs, or charges against the estate to the extent that a creditor is over-secured.  11 U.S.C. 506(b).

provided that those fees do not exceed twenty percent of the amount adjudged for principal and interest.  10 DEL. C. § 3912. "However, an agreed upon fee which falls within this limit is presumed to be reasonable, and the defendant has the burden of rebutting the reasonableness of the fee asserted." Fiocchi of America, Inc. v. Smith, No. 98C-05-002, 1999 WL 463970, at *3 (Del. Super. Ct. Apr. 30, 1999).  The factors to be considered when evaluating the reasonableness of attorney fees include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer, (3) the fees customarily charged in the locality for similar legal services, (4) the amount involved and the results obtained, (5) the time limitations imposed by the client or by the circumstances, (6) the nature and length of the professional relationship with the client, (7) the experience, reputation, and ability of the lawyer of lawyers performing the services, and (8) whether the fee is fixed or contingent. General Motors Corp. v. Cox, 304 A.2d 55, 57 (Del. 1973) (citing Husband S. v. Wife S., 294 A.2d 89, 93 (Del. 1972)).

In arguing that the Court's limitation on post-confirmation fees and charges impermissibly violates their rights, the

19

Mortgage Lenders misread § 1322(b)(2).  Section 1322(b)(2)
prohibits a plan from modifying the rights of the Mortgage
Lenders.  It does not, however, prevent the Court from
determining whether asserted fees and charges are reasonable
under the mortgage instruments and applicable law.[11]  Accord
Wilson, 321 B.R. at 226.  In order for the Court to make such a
determination, the assessment of post-confirmation fees must be
fully disclosed both to the Debtors and to the Court.

    "The American bankruptcy system is often described as having
two primary objectives: first, ensuring the equitable and timely
repayment of creditors with valid claims; and second, affording
debtors a fresh start once they emerge from bankruptcy."  In re
Sanchez, 372 B.R. 289, 296 (Bankr. S.D. Tex. 2007).  When
Mortgage Lenders fail to disclose post-confirmation fees and
charges to both debtors and the Court, the bankruptcy system
cannot achieve the second of these twin goals.  In order for
debtors to receive a fresh start, both they and the Court must be
fully informed of all relevant facts, including post-confirmation

---

[11]    The Court acknowledges that the foregoing Delaware
state case law and statutory authority imposes a reasonableness
standard only as to attorneys' fees.  The Mortgage Lenders have
argued that they are not bound by a reasonableness standard as to
other charges, unless a clearly articulated basis for that
standard exists in their contract or state law.  The Court
disagrees and observes that, at least in the context of a Chapter
13 case, the proposition that a creditor enjoys an unfettered
right to impose unreasonable charges is singularly underwhelming.

fees and charges.  Moreover, it is incumbent upon the Court to
timely consider and rule upon post-petition fees and charges to
ensure that the purposes animating the Code are achieved.  If the
Court and the Chapter 13 Trustee fully administer a case through
completion of a 60-month Chapter 13 plan, only to have the debtor
promptly re-file on account of accrued, undisclosed fees and
charges on her mortgage, it could fairly be said that we have all
been on a fool's errand for five years.

Having concluded that, in principle, a Chapter 13 plan may
contain provisions governing application of payments, timely
notice of assessed fees and charges, and allowance and
disallowance of pre-petition and post-petition claims asserted by
the Mortgage Lenders, the Court now turns to implementing its
ruling.  This is not as easy a proposition as it would seem.  The
Court is acutely aware of the size of the mortgage servicing
industry in the United States, and the fact that it is by nature
highly automated in order to deal with tens of millions of
payments made every month.  So the Court will not simply approve
and embrace the Proposed Plan Language submitted by the Debtors
without some confidence that the Mortgage Lenders in these cases
can actually configure their operations to comply with the new
procedures.  The Court has no doubt that the Mortgage Lenders
will strive in good faith to do as the Court will order; but it
is not beyond imagination that literal compliance with the pages

21

of detailed requirements in the Proposed Plan Language may not be possible.  Recent developments in other jurisdictions, however, suggest procedures that may provide a workable solution for the Mortgage Lenders while giving these Debtors the protections they seek: proper allocation of payments, timely notice of fees and charges, the opportunity to object to such fees and charges, and the benefit of their discharge upon full performance and consummation of their respective plans.

In Jones v. Wells Fargo Home Mortgage (In re Jones), 366 B.R. 584 (Bankr. E.D. La. 2007), the Chapter 13 debtor filed and obtained confirmation of a plan under which he proposed to pay pre-petition mortgage arrearages to the trustee and post-petition payments directly to the mortgage lender, Wells Fargo.  Id. at 586-87.  The debtor subsequently sought to refinance the Wells Fargo debt with another lender and requested a payoff amount from Wells Fargo.  Id. at 587.  Although the debtor could not obtain an accounting of the payoff amount from Wells Fargo, he remitted the demanded sums so as to not lose the refinancing commitment from the other lender.  Id. at 587-88.  When the debtor later brought an adversary proceeding against Wells Fargo, the court determined that Wells Fargo had demanded a payoff amount substantially in excess of the amount actually due.  Id. at 604. The court thereupon ordered the creditor to return the overpayment and held that Wells Fargo's collection of both pre-

petition and post-petition charges from property of the estate
without prior court authorization constituted a violation of the
automatic stay imposed by 11 U.S.C. § 362(a).  Id.

In a subsequent, supplemental memorandum opinion, Jones v.
Wells Fargo Home Mortgage (In re Jones), Adv. No. 06-01093, 2007
WL 2480494 (Bankr. E.D. La. Aug. 29, 2007), the court found that
Wells Fargo acted egregiously by (i) assessing post-petition
charges without providing notice to the debtor and (ii) diverting
payments made by both the Chapter 13 trustee and the debtor to
satisfy unauthorized claims.  Jones, 2007 WL 2480494, at *4.
Accordingly, the court awarded the debtor damages, including
attorney's fees.  Id.  To avoid imposition of punitive sanctions,
Wells Fargo offered to make a comprehensive revision of its
practices to prevent similar future violations that address
notice of post-petition charges and application of payments.  Id.
at *5.  The revised procedures, which were accepted and ordered
by the Court in Jones, are set forth below in their entirety:

> 1.  Upon the filing of a chapter 13
> bankruptcy petition, the amounts outstanding
> on a debtor's loan will be divided into two
> new, internal administrative accounts.  The
> first account will contain the sums to be
> paid under debtor's plan by the Chapter 13
> Trustee; typically the pre-petition past due
> amounts including past due interest, costs,
> charges, and fees ("Account One").[12]  The

---

[12]    Account One should not contain any estimated charges,
for example, unpaid escrow charges on past due monthly
installments.  It should only contain actual deficiencies in

opening balance on Account One should directly correlate to the amounts reflected on Wells Fargo's proof of claim. Account One will also include any amounts added by subsequent court order to the plan for payment by the Trustee during the case's administration. All payments made by the Trustee will be applied to the reduction of the amounts owed on Account One.

The second account will reflect the principal amount due on the petition date[13] ("Account Two"). No other sums should be owed on Account Two at the start of the case. Account Two will include post-petition interest accrual, post-petition property insurance or property tax expenditures, and other court authorized post-petition charges as provided in paragraph 2 below.[14] A debtor's regular monthly note payments will be posted to this account, reducing post-petition interest accrual, post-petition property and tax expenditures, and principal. The account's first posting will typically be the first installment payment due on the loan following the petition date.

Wells Fargo may maintain, post-petition, its customary records on the loan provided

---

payment. Wells Fargo may elect to carry a positive escrow balance existing on the petition date in Account Two rather than Account One in order to assist debtor's with the amortization of future property tax and insurance expenditures. If this practice is elected, it shall be noted on the proof of claim filed by Wells Fargo.

[13]     Typically, proofs of claim include the entire installment payments that are past due. If this is done, the principal amount reflected in the second account must be adjusted downward to accommodate the anticipated principal payments being made through the plan in order to avoid a double payment. Alternatively, the past due installments reflected in the proof of claim can be adjusted to eliminate principal. If this option is chosen, disclosure as to how this will affect the future amortization of debtor's loan must be provided.

[14]     The posting of post-petition charges is constrained by the provisions of paragraph 2 which follows.

that the two new internal accounts shall
control the loan's administration during the
pendency of the case.

2.  With the exception of post-petition
property taxes and property insurance
expenditures, Wells Fargo may provisionally
accrue, but not assess or collect, any post-
petition charges, fees, costs, etc.[15] allowed
by the note, security agreement and state
law.  Post-petition property tax and
insurance expenditures may be assessed
against debtor's account and collected after
the delivery of a ten day written notice to
debtor, debtor's counsel, and the Trustee.
The assessment and collection of expenditures
for post-petition property inspections and
taxes will not require approval of the
bankruptcy court unless a written objection
is filed within ten days of the notice of
assessment and collection.  If authorized by
Wells Fargo's note, security agreement, and
state law, the collection of amounts
necessary to pay post-petition insurance and
property tax expenditures may be made in
advance through the use of escrow accounts.
If escrows are utilized, Wells Fargo must
give a written accounting of the amounts
collected at the time it seeks to apply the
escrowed funds to payment of the insurance or
property tax expenditures.

As to Post-Petition Charges, annually,
between January 1 and February 28 of each
year during a case's administration, Wells
Fargo shall file with the Court and serve
upon the debtor, debtor's counsel, and the
Trustee, notice of any Post-Petition Charges
(which do not include property taxes or
insurance), accrued in the preceding calendar
year.  The notice shall contain an
itemization describing the charge, amount
provisionally incurred, the date incurred,
and if relevant, the name of the third party
to whom the charge was paid.  The notice will

---

[15]    Court approved post-petition charges other than post-
petition interest, property tax or insurance expenditures will
hereafter be referred to as "Post-Petition Charges."

also provide a direct reference to the provisions of the note, security agreement, or state law under which Wells Fargo asserts its authority to assess each type of charge.

The notice shall also state that debtors, the Trustee, and any other interested party, shall have 30 days within which to object to any or all assessments outlined in the notice.  It shall contain a statement to the effect that debtor may elect to add the charges to his plan with approval of the bankruptcy court, satisfy the charges directly outside the plan, or defer repayment until the conclusion of his case.

If no objection to the amounts provisionally assessed is filed, or if filed, upon entry of an order approving some amount of the provisional charges, Wells Fargo may submit a proposed *ex parte* order authorizing assessment of the Post-Petition Charges as set forth in its notice or as approved by the court, as applicable.  However, Wells Fargo may not collect on any approved Post-Petition charges unless the Debtor voluntarily delivers payment separate and above from that due as a regular monthly installment or obtains approval of the court to modify the plan and satisfy the amounts due through periodic payments by the Trustee.  If the approved Post-Petition Charges are to be paid through the modified plan, they will be added to Account One and satisfied by the Trustee. If to be paid by the debtor, they may be added to Account Two.

If no provision for payment is made by a debtor, the collection of the approved Post-Petition Charges must be deferred until the close of the case or relief from the stay is obtained.

3.  If Wells Fargo does not issue a notice of Post-Petition Charges, in accordance with Paragraph 2, for any given year of the case's administration, then Wells Fargo shall be prohibited from collecting or assessing any charges accrued against the debtor for that year and shall treat the debtor as fully current at the time of discharge.

> 4.  Upon the issuance of a discharge,
> Wells Fargo shall adjust its permanent
> records to reflect the current nature of
> debtor's account.  Provided, however, that if
> debtor elected to defer the payment of
> approved Post-Petition Charges until the
> conclusion of the case's administration, then
> Wells Fargo shall be authorized to collect
> said sums in accordance with the provisions
> of its note, security instrument, and state
> law.

Id. at *5-6 (numbering of footnotes as quoted in this Opinion
does not match numbering of footnotes in the original).

The Court's concern is that the procedures adopted in these
cases be workable.  Accordingly, the Court does not wish to
impose practices it arrived at unilaterally, as they may perhaps
prove inefficient or unworkable.  Because Wells Fargo, a major
mortgage lending and servicing company, has developed and offered
to adopt, on a nationwide basis, the above procedures in Jones,
the Court is confident that the Mortgage Lenders in these cases
can effectively implement these procedures in the cases at bar.
Accordingly, for the purposes of these cases, the Court will
adopt the practices and procedures set forth above.

## IV.  __CONCLUSION__

For the reasons stated above, the Court determines that the
Debtors' plans may be confirmed if they are amended to conform to
the procedures outlined above.  Additionally, in an effort to
ensure uniformity in Chapter 13 practice in this jurisdiction,
the Court will direct the appointment of a Special Committee for

the purpose of amending our model Chapter 13 plan (known as Form 103) and modifying such other of our Local Rules relating to consumer bankruptcy practice as may be necessary and appropriate.

Appropriate orders will issue.

BY THE COURT:

Dated: April 7, 2008

_____
BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

## APPENDIX A

## **Proposed Plan Language**

(1a) Long term or mortgage debt - ARREARAGE ONLY to be paid
to [mortgage holder] on the mortgage in the amount of $____.
Regular monthly payment to be made directly by Debtor beginning
[date]. Debtor(s) reserves the right to contest the amount of
arrears filed by creditor on the proof of claim. Confirmation of
the plan shall impose an affirmative duty on the holders and/or
servicers of any claims secured by the liens, mortgages and/or
deeds of trust and/or note on the principal residence of the
Debtor(s) to do all of the following:

(a) To apply the payments received from the trustee on the
pre-petition arrearages, if any, only to such arrearages.
For the purposes of this plan, the "pre-petition" arrears
shall include all sums included in the "allowed" proof of
claim and shall have a "0" balance upon entry of the
Discharge Order in this case.

(b) To deem the pre-petition arrearages as contractually
current upon confirmation of the plan, thereby precluding
imposition of late payment charges or other default-related
fees and services based solely on the pre-petition default
or defaults.

(c) To apply the direct post-petition monthly mortgage
payments paid by the trustee or by the Debtor(s) to the
month in which each payment was designated to be made under
the plan or directly by the Debtor(s), whether or not such
payments are immediately applied by the creditor to the
outstanding loan balance or are placed into some type of
suspense, forbearance or similar account.

(d) To notify the trustee, the Debtor(s), and the attorney
for the Debtor(s) in writing of any changes in the interest
rate for any non-fixed rate or any adjustable rate mortgages
and the effective date of any such adjustment or
adjustments, not less than 60 days in advance of such change
or at such time as the change becomes known to the holder if
the change is to be implemented in less than 60 days.

(e) To notify the trustee, the Debtor(s) and the attorney
for the Debtor(s) in writing of any changes in the property
taxes and/or property insurance premiums that would either
increase or reduce the escrow portion, if any, of the
monthly mortgage payments and the effective date of any such
adjustment or adjustments no less than 60 days in advance of
such change or at such time as the change becomes known to

the holder if the change is to be implemented in less than 60 days.

(f) MODIFICATIONS.  The holders of the claims secured by a mortgage on real property of the Debtor(s), proposed to be cured in section 1(a) above of this plan shall adhere to and shall be governed by the following:

(i) Pre-petition Defaults.  If the Debtor(s) pay the cure amount specified in section (1a) above, or in such amount as may be established by the creditor's proof of claim, while timely making all required post-petition payments, the mortgage will be reinstated according to its original terms, extinguishing any right of the holder to recover any amount alleged to have arisen prior to the filing of the petition.

(ii) Post-petition defaults.  Within 30 days of issuing the final payment of the cure amount specified in section (1a) above, the trustee shall serve upon the holder, the Debtor, and the Debtor's attorney a notice stating that (1) the cure amount has been paid, satisfying all pre-petition arrearage obligations of the Debtor(s); (2) the holder is required to treat the mortgage as reinstated and fully current unless the Debtor failed to make timely payments of post-petition obligations; (3) if the Debtor failed to make timely payments of post-petition obligations, within 60 days after the trustee's notice, the holder is required to file a Statement of Outstanding Obligations, consisting of an itemization of all outstanding payment obligations which it contends are due as of the date of its statement, with service on the trustee, the Debtor(s), and the Debtor'(s) attorney; (4) if the holder fails to file and serve a Statement of Outstanding Obligations within the required time, the holder is required to treat the mortgage as reinstated according to its original terms and fully current as of the date of the trustee's notice; and (5) if the holder does serve a Statement of Outstanding Obligations within the required time, the Debtor(s) may (i) within 30 days of service of the Statement, challenge the accuracy thereof by motion filed with the Court, to be served upon the holder and the trustee, or (ii) propose a modified plan to provide for payment of the additional amounts that the Debtor acknowledges or the court determines to be due.  To the extent that amounts set forth on a timely filed Statement of Obligations are not determined by the court to be invalid or are not paid by the Debtor through a modified plan, the

right of the holder to collect these amounts will be
unaffected.  No liability shall result from any
nonwillful failure of the trustee to serve the notice
required by this subparagraph.

(iii) Costs of collection.  Costs of collection
including attorneys' fees incurred by the holder after
the filing of this bankruptcy case shall be claimed
pursuant to section 1(a)(6)(B) above.

(iv) In the event of a default on the regular monthly
payment by Debtor after all pre-petition arrears have
been paid by the trustee, and after the time set for
the Statement of Obligations, the holder must submit a
Statement of further Obligations within 30 days of the
date in which said fees/costs were incurred for further
fees and/or costs with notice to the trustee, Debtor
and Debtor's attorney. (1) If the holder fails to file
and serve a Statement of further Outstanding
Obligations within the required time, the holder is
required to treat the mortgage as reinstated according
to its original terms and fully current; and (2) if the
holder does serve a Statement of further Outstanding
Obligations within the required time, the Debtor may
(i) within 30 days of service of the Statement,
challenge the accuracy thereof my motion filed with the
Court, to be served upon the holder and the trustee, or
(ii) propose a modified plan to provide for payment of
the additional amounts that the Debtor acknowledges or
the court determines to be due.  To the extent that
amounts set forth on a timely filed Statement of
Obligations are not determined by the court to be
invalid or are not paid by the Debtor through a
modified plan, the right of the holder to collect these
amounts will be unaffected.